EDWARD GRESHAM, plaintiff in error, vs. WILLIAM E. WEBB, and E. M. WILLIAMS, defendants in error.

[1.] A conveyance of land by one, against whom the land conveyed was held adversely by claim of title, is void. *Cain & Morris vs. Monroe*, 23 *Ga. Rep.* 82, overruled.

[2.] Complaint in ejectment not amendable by striking out the old plaintiff and substituting another in his place. *Neall vs. Robertson*, 18 *Ga. Rep.* 399, affirmed.

[3.] A perfect equity cannot originate in a contract, utterly void by law.

Complaint, for land, in Haralson Superior Court. Tried before Judge HAMMOND, April Term, 1859.

This was an action (brought in the form prescribed by the Act of 1847) by Edward Gresham, against William C. Webb, and Elihu M. Williams, for lot of land number 195, in the seventh district of Haralson county.

Plaintiff proved that the defendants had adverse possession of the land at the commencement of this suit, and had had for more than a year before. Plaintiff then offered in evidence a copy grant (having first proved the loss of the original) to John H. Goldsby, for the premises in dispute; also a deed duly recorded, from Goldsby to Harrison Crow, for the same. He then tendered in evidence a deed duly recorded from Crow to plaintiff; said deed dated 20th December, 1854. To the introduction of which last deed defendants objected upon the ground, that the same was made while defendants held the adverse possession of said premises, and that said deed was consequently void under the statute of 32d *Henry* 8th. The Court sustained the objection, and excluded the deed.

Plaintiff's counsel then moved to amend the declaration by inserting the name of Harrison Crow, as a plaintiff in the cause; which motion the Court refused.

Plaintiff then moved to submit the deed from Crow to himself, excluded as above, to the jury, the question being

one of fact to be determined by them; which motion the Court also overruled.

To all which rulings and decisions counsel for plaintiff excepted, and assigns the same as error.

G. J. WRIGHT; and VASON, for plaintiff in error.

. MERRELL, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

Up to 1857, in the case of *Cain & Morris vs. Monroe,* 23 *Georgia Reports* 82, it had always been held in this State, that a conveyance of land by one against whom the land conveyed was held adversely by claim of title, was void. The contrary doctrine was ruled by a majority of this Court in that case. My brother STEPHENS who has taken the place of Governor McDONALD concurring with me, that the former adjudications were right, the old doctrine is reestablished, and I trust the rule thus resettled, will remain until changed by the Legislature; for upon this, and all other subjects involving the very foundations to property, there ought to be an end to questions.

Nothing is more common than to meet with such remarks as fell from Lord Chancellor Eldon, in the case of *Gee vs. Pritchard,* (2 *Sawnst. Ch. Rep.* 441.) In the remarks of the great English Judge, after stating the difficulty which pressed him upon the point under consideration, he adds, "but it is my duty to submit my judgment to the authority of those who have gone before me." Again, "the doctrines of this Court ought to be as well settled, and made as uniform almost as those of *the common law.*" Still further, "I cannot agree that the doctrines of this Court, are to be changed with every succeeding Judge. Nothing would inflict on me greater pain, in quitting this place, than the recollection that I had done anything to justify the reproach, that the equity of this Court varies like the Chancellor's foot."

It is for the sake of upholding the vital principle of uniformity and permanency in decisions, and not on account of the paltry gratification of my judicial pride, that I am glad to see this and all other important rules of property, steadfastly adhered to.

The deed from Crow to Gresham then being void, the defendant being in adverse possession of the premises in dispute, at the time the conveyance was executed, the plaintiff could not recover the land in his own name; neither could he amend by complaint by striking out his own name, and substituting that of Crow, his grantor, in lieu thereof. *Neall vs. Robertson*, 18 *Ga. Rep.* 399.

It is argued, that Gresham having purchased and paid for the land, he has a perfect equity, which will enable him to maintain the action. But how can a perfect equity accrue under a contract which is absolutely void?

Again, it is insisted that the deed should have been allowed to go to the jury, as the plaintiff might have shown that the possession of the defendant was not adverse when the land was sold.

The plaintiff's deed was executed in December, 1854; the suit was brought in August, 1855; and the plaintiff proves by his own witness, Mathew Reed, that the defendant had been in adverse possession, claiming the land as his own, for more than twelve months before the commencement of the action. Of course, therefore, the possession was adverse in December, 1855, when the deed from Crow to Gresham was made.

Judgment affirmed.

STEPHENS J. concurring.

BENNING J. dissenting.

At the time when the deed from Crow to Gresham, the plaintiff, was made, Webb & Williams, the defendants, were

in possession; Crow held a deed from one Goldsby. made in 1830; that deed was duly recorded. Goldsby was the drawer and grantee of the land. So, the title was in Crow. Webb & Williams were in the actual possession of the land; that was all of their title.

The Court below held the deed, from Crow to Gresham, void; and the majority of this Court have held it void. Judge STEPHENS, in delivering the opinion of the majority of the Court, stated, that he thought the deed void; made so, however, not, by the statute of the 32d of Henry the 8th against bracery and the buying of titles, but, by the common law; that he approved the decision rendered by a majority of this Court, in Cain & Morris vs. Monroe, 23 Ga. 82, which decision, was, that that statute is not in force; but that he considered this deed as one which, the common law made void, and that he held the common law to be in force.

Judge LUMPKIN then remarked, that he too thought the deed void by the common law, and that he had never considered more of the statute of Henry the 8th to be in force, than what was in affirmance of the common law.

I then said, that I was not prepared to give my assent to the position, that the deed was rendered void by the common law, that I had never heard the position argued; that I would examine it after the adjournment of the Court, and do my best, to bring myself to accept it; and that whatever the result of my examination was, I would make it known.

Accordingly, I have examined the position, and am constrained to say, that I cannot accept it. Why I cannot, I will now state.

The position involves two questions; one, whether the common law is such, that if in force, it would make the deed from Crow to Gresham, void; the other, whether if that be so, it is in force. These two questions in their order.

[1.] Is the common law such, that, if in force, it would make this deed from Crow to Gresham, void?

This question may be resolved into two other questions—.

these two. By the common law is there any restriction on the alienability of such a title as that of Crow's? If there is, is this deed of his, within that restriction?

What was Crow's title? He had a duly recorded deed, from Goldsby, and Goldsby was the drawer, and the grantee, of the land. Webb & Williams had the naked possession of the land, but that was all they had. They were mere original disseizors without any right, or color of a right. These things being so, the title of Crow, was, not merely a right of *action*, but it was a right *of possession*—a right of entry *by his own act* at his pleasure. 2 *Black. Com.* 195 *et seq.*

Now is there, by the common law, any restriction upon the alienability of such a title as this of Crow's?

By natural law, the alienability of property is without restriction; alienability makes a part, and a great part of the value of property. On those, then, who assert a restriction on the alienability of property, is the burden of showing, clearly, that there is some municipal laws which makes the restriction. Now is there any evidence that clearly shows the existence of any rule of the common law, which renders, inalienable, such a title, such a title as this of Crow's? I hardly think so.

There is, within my reach very little evidence on the question. The statute of the *32d Henry the 8th*, was passed in 1540, more than three hundred years ago; and when it was passed, it took the place of the part of the common law, which imposed restriction or alienation, in the case of such a title as Crow's, if indeed there was any part of the common law, which did that; and all decisions on the subject, were, from the date of the statute, placed on the statute, and not on the common law. The reports, therefore, for the last three hundred years give us no decisions, as to what the common law was; and when we require decisions further back, we have to go to the year books, and they are not within my reach.

What other evidence there is, must come from some source not entitled to full confidence, for the decisions of the Courts are the best evidence of what the common law is. Of this inferior kind of evidence, there exists some within my knowledge, but it, I insist, is both scanty and conflicting. What is it? A dictum of *Lord Coke;* a similar dictum of *Chief Justice Montague,* certain dictums in echo of these. The preamble of the statute of the *32d of Henry the* 8*th,* which, is, I think, in conflict with the dictums. This is about all.

The dictum of Coke is, that nothing, in action, entry, and re-entry, can be granted over. *Coke L.* 214, *a.*

The dictum of C. J. Montague is: "Further, I take the statute, that if he who is out of possession, bargains or sells or makes any covenant or promise to part with the land after he shall have obtained the possession of it, this shall be within the danger of the statute, whether he who so bargains, sells, or promises, have a good and true right and title or not; and in this point the statute has not altered the law, for the common law before the statute was, that he who was out of possession might not bargain grant or let his right or title, and if he had done it, it should have been void." 1 *Plow.* 88.

According to these dictums, if the owner was out of possession, he could not "grant," "bargain," or "sell," or, "promise" to do so. His being out of possession was, enough; it was not necessary that another should be in possession. The dictums go to this extent.

But even these dictums do not go the length of saying, that a grant or assignment, by the owner though out of possession, would not be maintained in equity. We know that Courts of Equity, sustain the assignment of choses in action, and there is less of maintenance in selling a right of entry, than there is, in selling a chose in action, for the last, is no more than a right of action, while the first is a right to enter at pleasure, by your own act, into the possession of your own property. Courts of Equity also sustain assignments of a

trust, made by the *cestui que trust*, although it may be, that the trustee is in possession, asserting title in full, in himself, and denying the trust.

So much for the evidence on one side; which is but *dic·tums* at best.

On·the other side, there is, I think, some evidence, in the preamble to "the bill of bracery and buying of titles" *(32 Hen. 8)*. The terms of the preamble, I think, authorize the inference, that the opinion of the legislature was, that the buying of titles was not maintenance, but was something which it required a new law, to prohibit. The preamble, after reciting, that the "ministration" of the laws, &c., was "greatly hindered and letted, by maintenance, embracery, champerty, subornation of witnesses, sinister labor, buying of titles and pretended rights of persons not being in possession," &c., goes on thus; "For the avoiding of all which misdemeanors and buying of titles and pretended rights," &c. Now, if the Legislature had thought the buying of titles, maintenance, why should they have mentioned it here? Why should they not have been content to let it, with the other mentioned things, be covered by the word "misdemeanors?" Again, the expression, "which misdemeanors *and* buying of titles," implies in itself, that the buying of titles was thought not to be, a misdemeanor. Lastly, if the buying of titles was thought to be maintenance, why should it have been mentioned at all—maintenance having been mentioned? That word would cover it. At least, why should that species of maintenance be mentioned, and none of the many other sorts?

Indeed, so far as I can ascertain, the very expression—the buying of titles was imported into the law by this statute.

I set the evidence contained in this preamble, against the dictums aforesaid, and I ask, if it does not balance and over-balance them? Say, however, that it does not, then what is the extent of these dictums? Do they make rights of entry, wholly inalienable? I think not. Coke's expression is, that

rights of entry cannot be *granted*—Montague's, is that, he who is out of possession, " might not *bargain, grant* or *let*, his right or title." But this was not saying, that a right of entry is wholly inalienable, grants, bargains, leases, are only some of the modes of alienation; and they are all modes which are not accompanied, by livery of seizin. Feoffment, with livery of seizin, is another mode; and a man although having only the right of entry, is by virtue of that right, entitled to go on any part of the land, and when there, to sell it by feoffment, with livery of seizin. Indeed if the land is held adversely to him, and he is afraid to step over the lines, it is not necessary that he should do more, than go near to the land, and there make solemn *claim* to the land, and a livery *in law.*

Blackstone, speaking of the remedies for ouster, says, " The first is that extrajudicial and summary one," " of *entry* by the legal owner, when another person who hath no right, hath previously taken possession of lands and te! e nents. In this case the party entitled may make a formal, but peaceable, entry thereon, declaring that thereby he takes possession; which notorious act of ownership is equivalent to a feodal investiture by the lord; or he may enter on any part of it in the same county, declaring it to be in the name of the whole." " If the claimant be deterred from entering by menaces or bodily fear, he may make *claim*, as near to the estate as he can with the like forms and solemnities which claim is in force for only a year and a day. And this claim, if it be repeated once in the space of every year and a day, (which is called *continual claim*,) has the same effect with, and in all respects amounts to, a legal entry. Such an entry gives a man seizin, or puts int> immediate possession him that hath right of entry on the estate, and thereby makes him complete owner, and capable of conveying it from himself by either descent or purchase." (3 *Black. Com.* 174.)

Thus then it appears, that a man having only the right of entry into land, might convey the land, if he would but go

through the ceremony of a momentary entry on any corner of the land; or if, deterred by fear from doing that, he should go into the neighborhood of the land, and there make solemn claim to it.   In other words, it appears, that whether he could convey the land, by grant, by bargain and sale, by lease, he could convey it, by feoffment, with livery of seizin.

If then we concede the dictums of Coke and Montague, what do they amount to?   No more than this, that though the common law forbade the transfer of a right of entry, by grant, or bargain and sale, or lease, it did not forbid the transfer, by the easy mode above indicated, viz; a feoffment, with livery of seizin.

I insist, then, that there is no sufficient evidence of any restriction at all, by the common law on the alienability of a right of entry, but that if there is, it is confined to certain modes of alienation, and does not extend to the mode by feoffment and livery of seizin, and that this is a mode practicable and easy, in the case of a right of entry.

Was the deed of Crow's, made in this way—made with ivery of seizin?   The evidence is, on this point, silent.   And in the absence of evidence on the point, I incline to think, that a Court should, if necessary to the validity of the deed, presume, that the deed was accompanied by livery of seizin. Crow was the true owner, and Webb and Williams were but original disseizors.   I see not, therefore why the utmost liberty of presumption, is not to be exercised, in favor of Crow, as against them.   A Court—at least a Court of Equity, frequently presumes livery of seizin, to prevent injustice and iniquity.   And whatever a Court of Equity could presume, may not a Court of law also, presume?   Does not the Act of 1820, put a Court of law, on the same footing, in this respect, with a Court of Equity?

My conclusions, then, thus far, are as follows :

First, there is no sufficient evidence, that the common law imposes any restriction at all, on the alienation of a right of entry—a right to take possession at will.

Secondly, if the common law does impose any restriction on that right, it confines the restriction to alienation unaccompanied by livery of seizin—a thing which may accompany the alienation of even a right of entry, for the person having that right, has the right to enter and make livery of seizin.

Thirdly, as Crow had the right of entry, when he made his deed to Gresham, we are, perhaps, bound to presume, that he did enter and make livery of seizin.

Whence, fourthly, it is by no means clear, that Crow's deed is void by the common law, even if there is a rule of the common law, which would make it void, unless it was accompanied by livery of seizin, for it may have been accompanied by livery of seizin.

This is my answer to the first of the two questions—the question, whether, there is any rule of the common law, which would make the deed from Crow to Gresham void.

[2.] But suppose me wrong in this answer—suppose it to be true, that, by a rule of the common law, that deed would be void, unless it was accompanied by livery of seizin, and, that it was not accompanied by livery of seizin—then the second of the two questions, demands attention—the question, whether this rule of the common law, is now in force in Georgia.

If there is any rule of the common law, which would make the deed from Crow to Gresham, void, it must be a rule which may be stated in some such words as these: A deed made without livery of seizin, by A. to B. for land held adversely by C. is void in every instance, even the instance in which, A. has the right of entry into the land, and therefore, the right, and the power, to make livery of the land. For, Crow had the right of entry into the land in question; his title was a regular chain from the State down to himself; Webb and Williams, the persons holding the land adversely to him, were mere original disseizors, neither of them holding by descent, or other derivative title; Crow, therefore, as

we have seen from Blackstone, had the right of possession, the right to redress himself by his own act of entry; and having that right, he had, as we have also seen from Blackstone, the right, and the power, to make livery of seizin of the land. It must be true, therefore, that if there is any rule of the common law, which would make Crow's deed void, it is a rule which may be stated in some such words as the words aforesaid, which have been used for stating it.

Now, to any rule susceptible of being expressed in these words, a part of the Act 1785, "to render easy the mode of conveying lands," &c., is, I say, directly repugnant. If I am right in this, the rule, if ever in force, was repealed by that Act.

The part of the Act to which I refer, is as follows:

" *Whereas*, many deeds of bargain and sale, and other deeds of feoffment or conveyance, have been made, which have not been enrolled or livery of seizin had, or may be different in point of form, when it was the legal intent of the party to sell and lawfully convey the same."

"Section I. *Be it enacted &c.*, That no deed of feoffment, bargain or sale, and deed of gift, or other conveyance of lands or tenements whatsoever, heretofore made, shall be impeached or set aside, in any Courts of law or equity, for want of form, or livery and seizin, or enrollment, or for any other defect in the form or in the manner of the execution of any such deeds or conveyance, either in the first deed or in any of the *mesne* conveyances derived therefrom, so that the right were and would have been in the person or persons conveying, if such defects had not happened in such conveyance, or in the manner of the execution of the same as aforesaid."

" Sec. II. And to the end that such evils may be remedied in the future,"

" *Be it enacted, &c.* That all deeds of conveyance, by way of bargain and sale, *bona fide* of lands and tenements, and executed under hand and seal in the presence of two or

more witnesses and a valuable consideration paid, that are proved or acknowledged before a justice of peace, or before the chief justice or one of the assistant justices, and the said deed is, registered by the clerk of the Court in the county where such lands or tenements lie, in a book by him to be kept for that purpose, within twelve months from the date of such deed, for which he shall receive four pence per copy sheet of ninety words; then, and in that case, such deed of conveyance by way of bargain and sale, shall be, and the same is hereby declared to be good and valid in law and equity, according to the true intent, construction and meaning thereof." (*Cobb*, 164.)

We may safely say, I think, that these words amount, at least, to this; that a deed, if witnessed, proved and registered, as they direct, shall even though not accompanied by livery of seizin, be good, in every case in which, there is in the donor, a "right," to convey with livery of seizin. And this, is directly repugnant to the supposed common law rule aforesaid, which is, that a deed made without livery of seizin, by A. to B. for land held adversely by C. is void, in every case—even in the case in which A. has the right of possession of the land, and therefore, the right, and the power, to make livery of seizin of the land. It therefore, repealed that rule, if the rule ever existed.

And the rule if so repealed, remains repealed, for there has been no Act to restore it.

I say, then, that the common law rule, if ever in force here, is no longer in force here.

I might, I think, stop at this point. But I will go a step or two further.

I remark, then, that all, or nearly all, the arguments adapted, to show, that the statute of the 32 *of Henry the 8th*, is not in force, are also adapted to show, that any such common law rule as this supposed one, is not in force. That rule and the statute differ in degree, not in kind—the statute being worse than the rule—but their rule is bad enough, I

think, to warrant us in believing, that the colonists would never have brought it with them to this new home. It was unsuited to their condition; it was calculated to retard the growth and settlement of the colony; it was against the spirit of commerce, which, even as early as the first colonization of Georgia, had become widely diffused in the mother country.

Lastly, I put this question, if we say, that such a common law rule as this, is in force—a rule which forbids a man, to sell land to which he has the right of possession, and which therefore, he may, *at pleasure, by his own act, enter upon and be seized of*, shall we not have to say, that all the similar common law rules are in force; or, the rule that the assignment of a chose in action, is maintenance, and therefore, void; the rule that a future interest in land is not assignable; the rule that possibilities are not assignable; the rule that the landlord cannot sell the leased land, without the consent and "attornment" of the tenant? A right of possession, is a much more nearly perfect thing, than any of these. Indeed, it is almost a perfect thing; what it lacks may be supplied by the mere act of its owner—he has but to step on his land, claiming it as his own, and the right becomes perfect—becomes a right in which, there is *juris et seisenæ conjunctio*. Nay, if afraid to step on the land, all he has to do, is to go near it, and make claim to it. A right of this kind, is more nearly perfect, than a chose in action, for a chose in action is a right, that can be asserted by an action at law only.

Upon the whole, then, my opinion is, that the deed from Crow to Gresham was valid. I must, therefore, persist in my dissent from the judgment of the Court.